[Civ. No. 13695.   First Dist., Div. One.   June 19, 1948.]

PHIL C. KATZ, as Administrator with the Will Annexed, etc., Appellant, v. EDWARD W. DRISCOLL et al., Respondents.

Henry F. Boyen and Frank J. Fontes for Appellant.

Elmer P. Delany and William A. Sullivan for Respondents.

BRAY, J.—Appeal from a judgment of the superior court on an order sustaining without leave to amend the defendants' demurrer to the complaint, and from an order after judgment dissolving an injunction.

The facts as alleged in the complaint are as follows: Michael Dolan died testate on August 2, 1946, and plaintiff was duly appointed administrator of his estate. In each of the four years, 1943 to 1946, Dolan applied to the State Department of Social Welfare for old age security benefits. In the application in each year, Dolan affirmed that he was eligible for such security and that he did not have personal property the value of which, less encumbrances, exceeded $600. In reliance upon said application the State Department of Social Welfare granted and paid to him as old age security benefits a total sum of $3,700. The city and county of San Francisco granted and paid Dolan intermittently from 1937 to 1941 the sum of $411.55, for indigent aid, upon an agreement in writing by which Dolan agreed to reimburse the city and county for all indigent aid granted. In addition, Dolan became indebted to the city and county in the sum of $255.15 for care and treatment of him as a patient at the San Francisco Hospital from April 20 to May 25, 1946. Claims for the amounts herein mentioned were presented by the state and the city and county to the administrator of the estate and duly allowed but not paid.

The complaint then alleges on information and belief that the representations made by Dolan were false and untrue and that at all times when he received aid from the state and the city and county, he had personal property in excess of $600, namely, that he owned certain numbered United States Savings Bonds. The numbers, dates and maturity values of the bonds are detailed, a $1,000 bond being payable to Dolan, or in the event of his death to defendant Rita C. Driscoll;

a $100 bond being payable to Dolan, or in the event of his death to defendant William John O'Brien, and the balance of the bonds being payable to Dolan, or in the event of his death to defendant Edward W. Driscoll. The total maturity value of all the bonds is $2,250.

It is alleged that no consideration was paid by any of the defendants for these bonds and that the bonds were gifts in contemplation of death, made without the knowledge of the state or the city and county, with intent to defraud creditors and to avoid the obligations mentioned, and that the making of such gifts was not discovered until after Dolan's death. There is an indebtedness for expenses of last illness and burial, totaling $391.53. It is also alleged that Dolan possessed certain bank accounts totaling $1,375.36, and that there is a deficiency of assets in the hands of the administrator to discharge the obligations of the decedent. It is alleged that the said creditors have applied to the administrator to prosecute an action for the recovery of the assets of the decedent. The complaint prays for the recovery of the bonds, and to cancel and set aside all transfers or gifts of said property, to quiet the title of the estate against defendants and "for such other and further relief as to the court may seem just, proper and equitable."

To this complaint, defendants filed a general demurrer which was sustained without leave to amend. Prior thereto, a restraining order pendente lite was issued restraining defendants from taking possession of the bonds until the final determination of the action, which order was set aside after the sustaining of the demurrer.

While the granting of leave to amend after a demurrer is sustained to a complaint is ordinarily within the discretion of the court, it will be held an abuse of discretion to sustain without leave to amend a demurrer where the complaint is not fundamentally deficient in alleging facts showing a right to some relief which can properly be given, but is only defective with respect to the manner or form in which the facts warranting relief have been pleaded. (*Washer* v. *Bank of America,* 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338]; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal. 2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Duffy* v. *Duffy,* 82 Cal.App.2d 203 [186 P.2d 61].)

While the complaint is poorly drawn and is undoubtedly vulnerable to special demurrer, and while the plaintiff, as will hereafter be pointed out, was proceeding upon the

wrong theory, there are sufficient facts alleged to warrant the court in granting plaintiff relief.

Section 579 of the Probate Code provides: "If the decedent, in his lifetime, conveyed any real or personal property, or any right or interest therein, with intent to defraud his creditors, or to avoid any obligation due another, or made a conveyance that by law is void as against creditors, or made a gift of property in view of death, and there is a deficiency of assets in the hands of the executor or administrator, the latter, on application of any creditor, must commence and prosecute to final judgment an action for the recovery of the same for the benefit of the creditors." "Section 579 of the Probate Code recognizes that the right to recover property conveyed by a decedent in fraud of creditors is an asset of his insolvent estate and that the executor or administrator is a trustee thereof for the benefit of creditors. The primary object of the statute is to enable the trustee to reduce that asset to possession and administer it for the benefit of creditors under the direction and supervision of the probate court. (*Hills* v. *Sherwood,* 48 Cal. 386, 393.) It has been held, however, that a creditor may not maintain an action to set aside a fraudulent conveyance, at least until the creditor has exhausted all means of procuring such an action to be brought by the executor or administrator. [Citing cases.] Thus the statute has as a secondary object the prevention of complications that would result if several creditors were to pursue the remedy and seek to apply the property to their individual claims." (*Webb* v. *Pillsbury,* 23 Cal.2d 324, 328 [144 P.2d 1, 150 A.L.R. 504].) The gist of the allegations of the complaint is to the effect that Dolan in his lifetime transferred to defendants the bonds in question with intent to defraud his creditors and to avoid the obligations mentioned, and that there is a deficiency of assets in the hands of the administrator. Some of the allegations need enlarging and clarifying, but the basis of a cause of action under this section is there. Plaintiff erroneously contended that the complaint set up a cause of action for the recovery of the bonds themselves. As against general demurrer the facts above mentioned stated a cause of action establishing a trust in favor of plaintiff in the proceeds of the bonds when received. The mistaking of his remedy would not justify sustaining a demurrer without leave to amend where the facts justify other relief.

■ Where a plaintiff, as here, prays for certain relief to which he is not entitled and "for such other and further relief" he is entitled to a judgment for such relief as may be consistent with the case made by the complaint and embraced within the issues. (*Hinkel* v. *Crowson,* 83 Cal.App. 87 [256 P. 479] ; 21 Cal.Jur. pp. 68, 69.) ■ Plaintiff is not entitled to possession of the bonds themselves for the reason that United States Treasury Regulations prohibit the cashing of such bonds by anyone other than the survivor mentioned in them. The pertinent regulations are found in United States Treasury Department Regulations Circular No. 530, and read as follows: (§ 315.46(c).) "If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue and is survived by the beneficiary, upon proof of such death and survivorship, the beneficiary will be recognized as the sole and absolute owner of the bond, and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor." (§ 315.2.) ". . . The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in these regulations, will be considered as conclusive of such ownership and interest. The Treasury Department will recognize no notices of adverse claims to savings bonds and will enter no stoppages or caveats against payment in accordance with the registration of the bonds." (§ 315.13. Judicial Proceedings (Judgment Creditors, Trustees in Bankruptcy, Receivers of Insolvents' Estates and Conflicting Claimants)) "A claim against an owner or coowner of a savings bond and conflicting claims as to ownership of or interest in such bond as between coowners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows: (1) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond *or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary.* (2) A judgment creditor, a trustee in bankruptcy or a receiver of an insolvent's estate will have the right to payment (but not to reissue) and a judgment creditor will be limited to payment at the redemption value current thirty days after the termination of the judicial proceedings or current at the

time the bond is received, whichever is smaller. (3) If a debtor, or bankrupt, or insolvent, is not the sole owner of the bond, payment will be made only to the extent of his interest therein, which must be determined by the court or otherwise validly established." (Emphasis added.)

It is obvious that subdivisions 2 and 3, giving a judgment creditor, a trustee in bankruptcy, or a receiver of an insolvent's estate, the right to payment, applies only to claims or levies on the bonds during the lifetime of the owner, and do not modify in any way the limitation in subdivision 1 which prohibits any impairment of the rights of survivorship.

Section 315.46(c) of the Treasury Regulations has in effect been adopted in this state by Civil Code, section 704, which provides in part as follows: "All United States savings bonds or other bonds or obligations of the United States, however designated, now or hereafter issued, which are registered in the name of one person payable on death to a named survivor, shall, upon the death of the registered owner, become the sole and absolute property of the surviving beneficiary named therein, unless the Federal laws under which such bonds or other obligations were issued or the regulations governing the issuance thereof, made pursuant to such laws, provide otherwise. This section shall not be construed to mean that prior to the enactment hereof the law of this State was otherwise than as herein provided." This section was enacted as an urgency measure, effective February 10, 1943, and the facts necessitating its passage as such, state (Stats. 1943, p. 270): "Doubt has arisen as to the interpretation of Federal regulations governing the issuance of United States war savings bonds and other United States bonds and obligations. In order that questions of ownership be settled and the sale of these bonds be not obstructed by conflicting interpretations, it is necessary that this act take effect immediately."

*Conrad v. Conrad,* 66 Cal.App.2d 280 [152 P.2d 221], held that when a coowner, who furnishes money to pay for the type of bonds involved here, dies, they belong to the surviving owner with no interest left in the decedent's estate. ". . . the question is not one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving coowner, and . . . death terminates all interest of the other coowner. Some of the bonds . . . were issued to two persons as coowners, and others to the purchaser, and upon his death, to a named beneficiary. There

seems to be no logical distinction to be made between the rights in the bonds of a surviving coowner or a surviving beneficiary.'' (p. 285.) (See, also, *Davies* v. *Beach,* 74 Cal.App. 2d 304 [168 P.2d 452]; *Harvey* v. *Rackliffe* (1945), 141 Me. 169 [41 A.2d 455, 161 A.L.R. 296]; *In re Briley's Estate* (1945), 155 Fla. 798 [21 So.2d 595]; *United States* v. *Dauphin Deposit Trust Co.,* 50 F.Supp. 73; *Myers* v. *Hardin* (1945), 208 Ark. 505 [186 S.W.2d 925]; 161 A.L.R. 304; 168 A.L.R. 245.)

''The Treasury regulations under which the bonds were issued . . . have the force of Federal law . . . No state can vary the terms of the Federal obligations or derogate from their full enforceability.'' (*Franklin Washington Trust Co.* v. *Beltram,* 133 N.J.Eq. 11 [29 A.2d 854].)

It is interesting to note that the court in the Conrad case (*supra*) made a lengthy review of the evidence and allegations concerning fraud, and affirmed the finding of the trial court that there was none. The court stated: ''We are not called upon to decide what the effect on the interest of plaintiff in the bonds would have been had the trial judge found'' breach of trust. (P. 290.) That its decision might have been otherwise is indicated by the fact that the court carefully limited its decision in the following language: *''In the absence of breach of trust* on the part of plaintiff, who was the trusted agent of Mrs. Inman, we conclude that the bonds belonged to him after her death.'' (P. 286; emphasis added.)

While the cases above cited hold that as between the government and the survivor or beneficiary of the bonds and all other claimants the courts will recognize only the survivor or beneficiary, there is no case that holds that where the bonds are the result of fraud, the persons defrauded cannot pursue the proceeds of such bonds in the hands of one who is a party to the fraud. To so hold would be to put a high premium on fraud. A person could steal his employer's money, use it to purchase United States bonds, and by directing that the bonds be payable to a survivor or beneficiary, preclude, in the event of his death, that employer from recovering his money. There is nothing in the federal regulations or law that requires such a construction. Even in the case of fraud, the contract made by the government with the bond purchaser to pay his survivor cannot be changed or interfered with, but principles of equity and fair dealing require that the person benefiting by such fraud may be required to disgorge the

proceeds of such fraud independently of the contract between him and the federal government, and without interference in its performance. Section 3439.04 of the Civil Code provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." ". . . upon grounds of public policy, it is further held that one cannot by any disposition of his own property put the same or the income thereof beyond the reach of his creditors, so long as he himself retains the right to receive and use it." (*McColgan* v. *Magee, Inc.,* 172 Cal. 182, 186 [155 P. 995, Ann.Cas. 1917D 1050].) 12 California Jurisprudence, page 1016 on Fraudulent Conveyances states: "If, however, the conveyance is made with intent to hinder, delay or defraud, it is utterly void as to both existing and subsequent creditors. The intent of the grantee is wholly immaterial. Even though he takes no part in the fraud or has not the slightest suspicion thereof, he, having paid nothing for the property, cannot be permitted to retain, as against his grantor's creditors, the fruits of such fraud."

The only case concerning the effect of the government regulations in which the question of fraud was involved is *In re Kalina's Will,* 184 Misc. 367 [53 N.Y.S.2d 775], but the question involved here of the right to pursue the proceeds of the bonds was not involved. There the surviving wife contended that by naming persons other than herself as beneficiaries of war bonds, her deceased husband effected an illusory transfer in fraud of her widow's rights under the New York Decedent Estate Law. The court stated that in view of the provisions of section 24 of the Personal Property Law of New York, which provided that "The right of an owner, coowner or beneficiary 'to receive payment of such bond according to its terms "may" not be defeated or impaired by any statute or rule of law governing transfer of property by will or gift or an intestacy . . .' " left the court no alternative but to confirm the bonds in the beneficiaries, even though the effect thereof was to permit a fraud on the widow. The court further pointed out that the Legislature alone could remedy a situation caused by section 24 itself.

The rule of law governing the rights of a beneficiary under a bond, in the absence of fraud, is well settled. However,

despite the fact that both the treasury regulations and Civil Code, section 704, state that the beneficiary shall become the "sole and absolute" owner, and despite the fact that cases from almost all jurisdictions have repeatedly emphasized the importance of the inviolability of federal obligations, it is difficult to believe that any such laws or regulations were intended to countenance a fraud such as alleged in the instant case. The purpose of the treasury regulations is to protect and hold the federal government immune from any attack on its performance of the contract as made in the bond. In other words, they are designed to prevent the implication of the government in any disputes concerning ownership of the bonds, protect it from any suits which might result from payment to a designated beneficiary or coowner, and, for the purpose of promoting sales, guarantee the performance of the government in strict accord with the contract.

These laws and regulations are not intended to confer on the beneficiary the right to retain permanently the proceeds from the bonds irrespective of fraud or any illegality in the manner in which the bonds were obtained. To hold otherwise would, in effect, say that the treasury regulations not only guarantee payment to the named beneficiary, but, thereafter, when he receives the proceeds, follow him around indefinitely, and, like a protective halo, render him completely immune from any ordinarily legitimate claims thereto. For the purpose of payment and performance of the government's contract obligation, the beneficiary is recognized as the "sole and absolute" owner. But "the rights of survivorship conferred by these [treasury] regulations upon a surviving coowner or beneficiary" (§ 315.13(1)) terminate there.

That, in the event of fraud, the treasury regulations do not prevent the application of a constructive trust in the proceeds of the bonds, is indicated by the decision in the case of *Ibey* v. *Ibey* (1945), (N.H.) [43 A.2d 157]. There the deceased husband purchased bonds payable at death to a son and two grandsons. The widow claimed that this was done with the intent to dispose of a large portion of his personal estate in fraud of her marital rights and in an attempt to deprive her of her distributive share in his estate. She waived the provisions of the will and elected to take her statutory rights. The court stated (p. 159 [43 A.2d]): "If fraud as herein defined is found, *it does not* follow that the bonds, valid in themselves, belong to the estate. The widow is entitled to what she has

lost, but otherwise the bonds are payable in accordance with their terms. The measure of damages is what the widow would have gained if the bonds had been made payable to the decedent's estate. To this extent, the bonds or their proceeds are subject to a constructive trust in favor of the plaintiff, if fraud is found. The federal government recognizes that ownership of such bonds may be different than the wording of them indicates.'' (Quoting § 315.13 as it existed in 1938, in substantially the same form as previously quoted herein.)

In *Tobola* v. *Wholey*, 75 Cal.App.2d 351 [170 P.2d 952], where bonds were purchased with partnership money and made payable to one of the partners and on her death to the other, the court decreed that the contingent beneficiary was entitled to the possession of one-half of the bonds. It was there said: ''Nor is there any merit in appellant's contention that the trial court acted in contravention of section 704 of the Civil Code by decreeing respondent to be entitled to the possession of one-half of the war bonds. By such order, the ownership or title to the registered bonds has not been changed, but only the ability to dispose of them.'' (P. 359.)

In *Ervin* v. *Conn* (1945), 225 N.C. 267 [34 S.E.2d 402], where the court denied a contention made on behalf of the estate that the provisions of the bond which it was claimed conferred absolute right of ownership on the survivors, merely constituted the designated persons agents to make the collection or receive payment of the bond. Although in *In re Di Santo's Estate* (1943), 142 Ohio 223 [51 N.E.2d 639], and *In re Karlinski's Estate*, 180 Misc. 44 [43 N.Y.S.2d 40], there is language which might be construed to mean that even the proceeds of the bonds are absolute in the hands of the survivor or beneficiary, no question of fraud was involved in those cases. In fact, in *In re Di Santo's Estate* (*supra,* p. 642 [34 S.E.2d]), the court expressly said: ''There is no question in this case of a transfer in fraud of creditors or the widow.''

Inasmuch as the complaint did set forth a cause of action under section 579 of the Probate Code, establishing the right of the plaintiff to a portion of the proceeds of the bonds, although not to the bonds themselves, the demurrer should not have been sustained without leave to amend. Attention is called to the fact that the plaintiff is not entitled to all the proceeds of the bonds, but only to so much thereof as is needed to make up the deficiency of assets in the hands of the administrator necessary to meet the expenses of administration and

the allowed claims of the creditors set forth in the complaint. The complaint alleges that the decedent was the owner of a certain promissory note secured by deed of trust on real property, but fails to give the value thereof. This causes an uncertainty as to what the assets are and what sum is necessary to make up the deficiency between the assets and the amount necessary to pay the claims and expenses of administration. Therefore the complaint will have to be amended.

Inasmuch as the plaintiff is not entitled to the bonds, the order dissolving the injunction restraining defendants from taking possession thereof was properly made.

The judgment is reversed and the trial court is directed to permit amendment of the complaint in accordance with the views herein expressed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied July 19, 1948, and respondents' petition for a hearing by the Supreme Court was denied August 12, 1948.