MRS. MILDRED G. TANNER v. PAUL R. ERVIN, EXECUTOR OF THE ESTATE OF ERNEST M. TANNER.

(Filed 2 July, 1959.)

**1. Courts § 18:     Estates § 9—**

Treasury Regulations in effect at the time of the purchase of U. S. Savings Bonds become a part of the bonds as a contract between the purchasers and the Federal Government, and therefore where such bonds are issued in the name of two individual co-owners in the alternative, the surviving co-owner is vested with the sole ownership of such bonds, at least in the absence of fraud or other inequitable conduct on the part of the survivor, and no State court can compel the U. S. Treasury to pay them to anyone else or recognize anyone else's interest in them except as expressly provided by the Treasury Regulations.

**2. Same:     Husband and Wife § 11:     Trusts 4b—     Equity will impress resulting trusts on proceeds of U. S. Savings Bonds when surviving co-owner has conveyed her rights therein to other co-owner.**

Husband and wife purchase U. S. Savings Bonds, Series E, with money owned and jointly earned by them. The bonds were issued in their names in the alternative. Thereafter they entered into a separation agreement pursuant to which the husband transferred and conveyed to the wife his interest in their joint business, home and certain personal property and in which it was agreed that the husband should have the Savings Bonds and joint checking accounts. The husband died having in his possession the Savings Bonds. *Held:* While only the surviving wife may cash the bonds, when the bonds are cashed the contract between the Federal Government and the purchasers is completely executed and the Federal Government has no further interest therein, and the State court will impress a resulting trust on the proceeds of the bonds and direct that the wife deliver the proceeds to the husband's executor in accordance with her conveyance of the bonds to him during his lifetime for a valuable consideration in the separation agreement.

**3. Appeal and Error § 49—**

Where there are no exceptions to the findings of fact, it will be presumed that they are supported by competent evidence and they are binding on appeal.

**4. Appeal and Error §§ 19, 38—**

A question discussed in the brief, which is not supported by any assignment of error based on an exception duly noted, will not be considered.

RODMAN, J., dissenting.

BOBBITT AND HIGGINS, J.J., concur in dissent.

APPEAL by defendant from *Sharp, S. J.*, 5 January 1959, Special Civil Term of MECKLENBURG.

Civil action to determine who is entitled to the proceeds of certain U. S. Government Bonds, Series E.

Pursuant to G.S. 1-184, the parties waived a jury trial.

This is a summary of the crucial findings of fact made by the Judge: Mrs. Mildred G. Tanner, the plaintiff, and Ernest M. Tanner, defendant's testate, intermarried on 4 July 1930, and lived together as husband and wife until 9 October 1956. While living together as husband and wife they purchased during the years 1942, 1943, 1944 and 1945 with money owned and jointly earned by them $16,-000.00 at maturity value of U. S. Government Bonds, Series E. All these bonds were issued payable to "Mr. Ernest M. Tanner or Mrs. Mildred M. (sic) Tanner."

On 9 October 1956 Ernest M. Tanner and Mildred G. Tanner executed a deed and separation agreement, which conforms with the requirements of G.S. 52-12 as to contracts of wife with husband affecting corpus or income of estate. The instrument has these recitals: No children were born of the marriage. The parties are engaged in the operation of two Orange Drink Stores in Charlotte, and own a home in Charlotte, certain U. S. Government Bonds, and certain funds deposited to their joint account in one or more banks in Charlotte. In this instrument the parties in consideration of mutual covenants and agreements therein contained covenanted and agreed as follows — we summarize the material parts —: Henceforth, the parties shall live separate and apart. In full, final and complete settlement of all interest which Mildred G. Tanner has in any property real or personal owned by them, and in full settlement of any claim Mildred G. Tanner may have against Ernest M. Tanner for support, Ernest M. Tanner conveys to Mildred G. Tanner all of his right, title and interest to the two Orange Drink Stores in Charlotte, including name, goodwill, inventory on hand, and fixtures, to be hers absolutely, and Ernest M. Tanner likewise conveys to Mildred G. Tanner, all right, title and interest to their home in Charlotte, including all furniture and personal "effects" therein. Since the home was owned by them by the entireties, it was agreed that the parties contemporaneously with the execution of the deed and separation agreement will join in a deed for the property to Edna Glick Andes as trustee for Mildred G. Tanner, who shall hold the title to the home in trust subject to the direction of Mildred G. Tanner.

Paragraph 6 of the instrument reads: "It is agreed between both parties hereto that the remaining assets which are jointly held by the parties hereto and shall consist of the savings account at American Trust Company in the sum of $22,467.00 and the United States Sav-

ings Bonds having a present value of $17,323.00 and two checking accounts at the American Trust Company and the Union National Bank of Charlotte totalling $24,367.45 shall become and are hereby made the sole property of the party of the first part."

Paragraph 7 reads: "It is the purpose of this agreement not only to enter into a separation agreement as between husband and wife to fix and establish the property rights as between husband and wife, but also to effect a complete division of the jointly held properties and property interests of the parties hereto."

Each party relinquishes, quitclaims and conveys to the other any right, title or interest which he or she may have by virtue of the marital relationship in any property now owned, or which may hereafter be acquired by the other. In addition, Mildred G. Tanner renounced her right to administer on the estate of Ernest M. Tanner in the event of his death, together with her right to inherit from him.

Mildred G. Tanner and Ernest M. Tanner accepted and took into their respective possession the property granted them by the deed and separation agreement. They did not live together thereafter.

Ernest M. Tanner died testate on 6 March 1957, after an illness of 52 days. His will dated 10 October 1956, the day after the execution of the deed and separation agreement, was duly probated in Mecklenburg County on 11 March 1957. Item II of the will refers to the separation agreement as the reason for making no provision for his wife Mildred G. Tanner. In Item III of his will he devised and bequeathed all of his property, real and personal, in fee simple to his daughter, Amber F. Isham, by a former marriage. In Item IV he named Paul R. Ervin, the defendant, as executor of his will.

Ernest M. Tanner at the time of his death had in his possession the $16,000.00 at maturity value of U. S. Government Bonds, Series E, above mentioned, and these bonds are now in possession of Paul R. Ervin, Executor. These bonds are the same bonds referred to in the deed and separation agreement.

Upon the facts found, the Judge concluded as a matter of law that plaintiff is the owner of these U. S. Government Bonds, Series E, and entitled to their immediate possession, and entered judgment accordingly.

From the judgment, defendant appeals.

*David J. Craig, Jr. and Guy T. Carswell for plaintiff, appellee.*

*W. Pinkney Herbert, Jr. and McDougle, Ervin, Horack & Snepp for defendant, appellant.*

PARKER, J.    Defendant has two assignments of error: one to the Judge's conclusion of law, and the other to the judgment.

All these U. S. Savings Bonds contain proper references to the Acts of Congress and to the Circulars and Treasury Regulations under which they are issued, which Regulations are made a part of the bonds by reference.

In the case *sub judice* four of these bonds, each with a value at maturity of $1,000.00, were issued in February 1942, and four similar bonds were issued in December 1942. Two similar bonds were issued in July 1943, and one similar bond in September 1943. One similar bond was issued in July 1944, and another similar bond in December 1944. One similar bond was issued in June 1945, and two similar bonds in December 1945.

The Code of Federal Regulations, Cumulative Supplement, Book 6, 1944, Title 31, Chapter II, Part 315, Subpart K, §315.32, specifies the manner in which these bonds registered in the names of "Mr. Ernest M. Tanner or Mrs. Mildred M. (sic) Tanner" as co-owners during the year 1942 shall be paid. §315.32(a) provides payment will be made to either co-owner upon his individual request during the lifetime of both. §315.32(b) provides, "if either co-owner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving co-owner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him."

Identical provisions and Regulations apply to the two bonds issued in July 1943 and to the one bond issued in September 1943. Code of Federal Regulations, 1943 Supplement, Book 1, 1944, Title 31, Chapter II, Subchapter B. Part 315, Subpart K, §315.32(a) and (b).

Identical provisions and Regulations apply to the two bonds issued in 1944. Code of Federal Regulations, 1944 Supplement, Book 2, 1945, Title 31, Chapter II, Subchapter B, Part 315, Subpart K, §315.32(a) and (c).

Substantially identical provisions and Regulations apply to the three bonds issued in 1945. Code of Federal Regulations, 1945 Supplement, Book 3, 1946, Title 31, Chapter II, Subchapter B, Part 315, Subpart L, §315.45(a) and (c).

The rule followed by a majority of the Courts, including North Carolina, frequently called the "majority rule," with respect to rights in United States Savings Bonds registered under Treasury Regulations in the names of two individual co-owners in the alternative, is that, upon the death of one of the co-owners, the surviving co-owner is vested with the sole ownership in such bonds, at least in the ab-

sence of fraud or other inequitable conduct on the part of the survivor. *Ervin v. Conn,* 225 N.C. 267, 34 S.E. 2d 402; *Watkins v. Shaw, Comr. of Revenue,* 234 N.C. 96, 65 S.E. 2d 881; *Hubbard v Wiggins,* 240 N.C. 197, 206, 81 S.E. 2d 630, 635-6; Annotation 37 A.L.R. 2d, Rights upon death of co-owners of United States Savings Bonds, II, Right of surviving co-owner generally, §3, Majority View, (a) Generally, pp. 1223-1225, where many cases are cited. See also *Jones v. Callahan,* 242 N.C. 566, 89 S.E. 2d 111; *Wright v. McMullan and Wright v. Wright,* 249 N. C. 591, 107 S.E. 2d 98, where the terms of the bonds fix the legal title to the bonds as between the government and the purchaser of the bonds, but these are not cases where the bonds were issued in the names of two individual co-owners in the alternative. There is a minority view, for which see the same A.L.R. annotation, §5, Minority View, pp. 1233-1236.

The principal basis for the majority view is that solution of the question as to the property rights of the surviving co-owner in a United States Savings Bond is one of contract, and that the Treasury Regulations having the force and effect of federal law, become a part of the bond as a contract between the purchaser and the federal government, and fix legal title to the bond, and are determinative of the property rights of the parties to the bond. *Ervin v. Conn, supra;* Annotation 37 A.L.R. 2d, §4, pp. 1229-1233, where many cases are cited.

"The contract between the United States and a purchaser of government bonds fixes legal title to the bonds for the purpose of protecting the government against suits involving title, but does not and should not affect other legal rights of third parties or change settled rules of law not necessary to effectuate its purpose." 91 C.J.S., United States, p. 318.

In the case of *In re Hendricksen's Estate, Rohn v. Kelley,* 156 Neb. 463, 56 N.W. 2d 711, *certiorari* denied *Rohn v. Kelley,* 346 U.S. 854, 98 L. Ed. 368, $10,000.00 Series G United States Savings Bonds were issued in the names of Mrs. Florence Hendricksen (mother) or Ethel Kelley (daughter) as co-owners. Ethel Kelley, the surviving co-owner had, during her mother's lifetime and for a valuable consideration, sold, assigned and transferred to her mother any interest she may have or purport to have in these bonds. The instrument of assignment recites: "Ethel Kelley further states that she had no interest in these bonds at the time her name was placed thereon and agrees that she shall have only such interest in the bonds as may be given her under the will of Florence Hendricksen." The Court held that the executor of the mother's estate was entitled to the proceeds

of the bonds to the exclusion of any interest in the surviving co-owner other than as provided in the will. In affirming the judgment below the Court said:

"From an examination of the cases cited by the defendant we are unable to find any case in which a conveyance by one co-owner of savings bonds to another was involved. For the most part the cases cited by the defendant refer to a situation where no positive act of the parties themselves, those who are co-owners of the bonds, intervenes between the time the bonds are issued and the time the dispute arises. The government would have no interest as to how the assets of Florence Hendricksen's estate would be distributed, or that by the last will of Florence Hendricksen, Ethel V. Kelley had no further rights in the estate so long as she retained the proceeds of the bonds. It seems clear that the federal laws and regulations are not intended to interfere with the positive act of two co-owners of bonds by which one conveys her interest in them to the other. In the instant case, as shown by the evidence, Ethel V. Kelley assigned all her right, title, and interest in the bonds to her mother during her mother's lifetime, and for a valuable consideration. The evidence also shows that she acknowledged that the proceeds of the bonds constituted part of the assets of her mother's estate, and her assignment of the bonds clearly indicates such to be true.

"The government's interest is a contractual one. Its obligation was to pay either of the co-owners the amount agreed upon as shown by the bonds upon their proper presentation, in compliance with the federal law. When the Treasurer of the United States satisfied the government's obligation by paying the proceeds of the bonds to Ethel V. Kelley, the government's interest in the matter ended. The government is in no sense a party to this litigation, and under the facts and circumstances could in no event have any interest in the result of this litigation.

"The court decreed that Ethel V. Kelley deliver the proceeds which she obtained from cashing the bonds to the executor in accordance with her assignment of the bonds for a consideration to her mother, whereby she agreed to take her share of the estate as provided for by her mother's will. There is nothing in this phase of the decree contrary to the laws of the United States or the regulations of the United States Treasury Department. Those laws and regulations do not prevent the declaration of a resulting trust in the proceeds of the bonds as shown under the facts in this case."

In *District of Columbia v. Edith Bolling Wilson,* 216 F. 2d 630, the decedent John Randolph Bolling was the brother of Mrs. Wilson,

and Mrs. Wilson, at various times, authorized her brother to purchase $93,000.00 at maturity value of U. S. Savings Bonds, Series G, to be issued in his name payable to her at his death. The District of Columbia contended there had been a taxable transfer within the District of Columbia inheritance tax statute, and that such a finding is dictated by the Treasury Regulations concerning U. S. Bonds. The Court affirmed a judgment of the District of Columbia Tax Court holding that Mrs. Wilson was entitled to a refund of inheritance tax paid with respect to the $93,000.00 of U. S. Bonds assessed under the District of Columbia Statute. In its opinion the Court said:

"Certainly the legal title to the bonds in question stood in the name of the decedent at the time of his death, and Mrs. Wilson acquired it on his death. If we may look only at legal title, excluding the actual, equitable, or true ownership, it follows that there was a taxable transfer. But the principle is firmly established that taxation is concerned with real ownership rather than with refinements of title. * * *

"It (District of Columbia) relies on 31 Code Fed. Regs. §315.2 (Supp. 1945), which provides: '* * * The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in the regulations in this part, will be considered as conclusive of such ownership and interest. * * *' We do not think, however, that this regulation is applicable as between the brother and sister here. Mrs. Wilson, and not decedent, had furnished the entire funds used to buy the bonds. And the terms of the letter authorizing the decedent to have the bonds issued in his name made it clear that he had the right only to take the income during his lifetime. Had the decedent cashed the bonds during Mrs. Wilson's lifetime, as presumably he could have done under the Treasury regulations, it seems clear that upon application the courts would have declared the proceeds to be held in trust for Mrs. Wilson. Cf. *Harrington v. Emmerman*, 1950, 88 U. S. App. D.C. 23, 186 F. 2d 757; *National Metropolitan Bank of Washington v. Stoner*, 1949, 85 U. S. App. D.C. 157, 177 F. 2d 37; *Haliday v. Haliday*, 1926, 56 App. D.C. 179, 11 F. 2d 565. The Treasury regulations would not have prevented such a decree. They do not purport to be concerned with such a situation. The regulations appear primarily designed to protect the Treasury as against adverse claimants in paying interest and principal of the bonds to the registered owner. The Treasury commonly has no concern with the funds or their disposition once it has paid them to the registered owner. Its contract has then been fulfilled. In the present case, as in the case supposed, no breach of the

regulations is produced. Indeed, where no purpose to defraud the Government has appeared, numerous courts have directed the registered owner to cash United States savings bonds and have ordered the proceeds paid to, and held in trust for, the true owner, notwithstanding the Treasury regulations. See *Makinen v. George,* 1943, 19 Wash. 2d 340, 142 P. 2d 910; *Union Nat. Bank v. Jessell,* 1948, 358 Mo. 467, 215 S.W. 2d 474; *Katz v. Driscoll,* 1948, 86 Cal. App. 2d 313, 194 P. 2d 822; *In re Hendricksen's Estate,* 1953, 156 Neb. 463, 56 N.W. 2d 711."

The facts in *Tharp v. Besozzi,* Ind. App., 144 N.E. 2d 430, (1957), in some respects, are quite similar to the facts here. The appellant, Thelma C. Tharp, and appellee's decedent, Arthur Morrison, were at one time husband and wife, and during the period of such relationship they acquired an equity in real estate, bank accounts, a postal savings account and a number of U. S. Savings Bonds, Series E, all of which property they held in their joint names with right of survivorship. The appellant filed suit for divorce against appellee's decedent 4 April 1946. While this suit was pending, the parties entered into a property settlement agreement, under the terms of which appellee's decedent received the U. S. Savings Bonds. The divorce was granted on 4 October 1946, but the court's decree neither incorporates the agreement, nor ratifies it by reference. Arthur Morrison died 15 November 1953, and the appellee was appointed administratrix *c. t. a.,* and as such she examined the contents of his safety deposit box, and found the U. S. Savings Bonds mentioned in the settlement agreement. The names of the payees had not been changed from the time of their original issue, and are as follows: "Mrs. Thelma Morrison or Mr. Arthur Morrison; Mr. Arthur Morrison or Mrs. Thelma Morrison; Mr. Arthur J. Morrison or Mrs. Thelma C. Morrison." The appellant, Thelma C. Tharp, contended that the Treasury Regulations under which the bonds were issued, and which are the terms of the contract between the United States and Arthur Morrison in his lifetime, bar the appellee from any recovery in the case. The Court after quoting the relevant parts of the Treasury Regulations under which the bonds were issued said:

"We have examined many cases from many jurisdictions and have found none in which the court has permitted a surviving co-owner to repudiate a *bona fide* agreement whereby she has surrendered her interest in bonds to her co-owner for a valuable consideration and upon the co-owner's death claimed the absolute ownership thereof for the sole reason that such deceased co-owner had not, during his

lifetime, cashed the bonds or taken steps to have them reissued in his name alone. * * *

"Our research on the subject convinces us that as far as the United States is concerned the bonds in suit are the absolute property of the appellant and that no state court or legislature can compel the government to pay them to anyone else or to recognize anyone else's interest in them except as expressly provided by the regulations under which they were issued. See notes 140 A.L.R. 1435, 161 A.L.R. 170, 168 A.L.R. 245, and 173 A.L.R. 550. However, this is not a suit against the government for the payment of the bonds nor does it seek directly or indirectly to compel the government to recognize appellee's alleged interest in them. The judgment herein merely enjoins the appellant to surrender the bonds in controversy for cash in compliance with the treasury regulations. After she has done that and the bonds have been paid to her the government has fully and completely discharged its contract and can have no interest whatever in the conclusion of an Indiana court that the proceeds of such bonds, when received by the appellant, shall be impressed with a trust growing out of a contract with which the government had nothing to do and of which equity and fair dealing require performance."

In *Roman v. Smith*, Ark., 314 S.W. 2d 225, (1958), the Supreme Court of Arkansas held that where a property settlement in a divorce action between decedent and his former wife provided for delivery to wife of eighteen U. S. Savings Bonds in decedent's name but payable on death to wife, but in lieu of bonds cash was subsequently given to wife by decedent who neglected to cash bonds or have them reissued, upon decedent's death a constructive trust would be imposed on wife as to proceeds of bonds in favor of decedent's estate. In its opinion the Court said:

"Many cases from other jurisdictions have been examined, and no case has been found where the court permitted a surviving owner of United States Savings Bonds to repudiate a property settlement agreement or a contract of any nature under which a surrender of interest in bonds was made to the other owner for a valuable consideration, and upon the surviving owner's claim to the absolute ownership thereof for the sole reason that such deceased owner had not, during his lifetime, cashed the bonds or taken steps to have them reissued in his name alone. * * *

"In this case, appellee received all that she was to get under the property settlement agreement which was at least approved in part by the Chancery Court, and now she seeks to get a part of that property which was set aside to the appellants' decedent solely because

he neglected to cash the bonds or have them reissued in his name alone during his lifetime pursuant to the Treasury Regulations. Such a construction of the Treasury Regulations is not supported by the authorities, and certainly is contrary to the principles of equity and fair dealing.

"Insofar as the United States of America is concerned the bonds in suit are the absolute property of the appellee, and this Court cannot compel the Government to pay them to anyone else or to recognize the interest of anyone else in them except as expressly provided by the Treasury Regulations under which they were issued. See notes 140 A.L.R. 1435, 161 A.L.R. 170, 168 A.L.R. 245, and 173 A.L.R. 550. But this is not an action against the United States for the payment of the bonds in suit, nor is it a proceeding to compel the United States to recognize the appellants' interest in them. This suit merely seeks to compel the appellee to surrender the bonds in suit for cash in compliance with the Treasury Regulations. The United States will satisfy its obligations under the bonds by paying the proceeds in accordance with the terms of its contract to the named beneficiary— the appellee in this case, and there is nothing in the law or regulations which prevents this Court from declaring a constructive trust in the proceeds of the bonds in order to prevent flagrant and unfair dealings or even fraud. See *Anderson v. Benson, supra; Chase v. Leiter, supra; Ibey v. Ibey, supra; Tharp v. Besozzi, supra; Union National Bank v. Jessell, supra.* Since the federal regulations require that the bonds be cashed 'voluntarily,' the court cannot compel the appellee to cash the bonds. It should, however, enter a money judgment against the appellee for the value of the bonds, which will be surrendered to her upon satisfaction of the judgment."

In *Silverman v. McGinnes,* 259 F. 2d 731, (1958), where a decedent delivered Series E Savings Bonds, registered as payable to himself and his former wife as co-owners or to himself and one or the other of his children as co-owners, to his wife stating that they were outright gifts to her and the children, and confirmed this by letter, the value of the bonds was held not includible in decedent's gross estate for estate tax purposes as an interest in property jointly held, even though Treasury Regulations purported to prohibit transfer of such bonds and decedent did not have bonds reissued in names of respective donees. The Court said in its opinion:

"The point is that with regard to payment by the issuer, the United States Government, the provisions of the contract including the regulations, govern. But the regulations do not apply to individual rights

of persons who under the state law of property have become equitably entitled to the proceeds."

In *Katz v. Driscoll,* 86 Cal. App. 2d 313, 194 P. 2d 822, the Court said in respect to the Treasury Regulations concerning U. S. Savings Bonds:

"The purpose of the treasury regulations is to protect and hold the federal government immune from any attack on its performance of the contract as made in the bond. In other words, they are designed to prevent the implication of the government in any disputes concerning ownership of the bonds, protect it from any suits which might result from payment to a designated beneficiary or co-owner, and, for the purpose of promoting sales, guarantee the performance of the government in strict accord with the contract.

"These laws and regulations are not intended to confer on the beneficiary the right to retain permanently the proceeds from the bonds irrespective of fraud or any illegality in the manner in which the bonds were obtained. To hold otherwise would, in effect, say that the treasury regulations not only guarantee payment to the named beneficiary, but, thereafter, when he receives the proceeds, follow him around indefinitely, and, like a protective halo, render him completely immune from any ordinarily legitimate claims thereto. For the purpose of payment and performance of the government's contract obligation, the beneficiary is recognized as the 'sole and absolute' owner. But 'the rights of survivorship conferred by these (treasury) regulations upon a surviving co-owner or beneficiary' (§315.13 (1) ) terminate there."

According to the federal statutes and Treasury Regulations under which the Savings Bonds in suit were issued, Mrs. Mildred G. Tanner, the surviving co-owner, is the sole legal owner of these Savings Bonds, and no State Court can compel the Treasurer of the United States to pay them to anyone else or to recognize anyone else's interest in them, except as expressly provided by the Treasury Regulations under which they were issued. When the Treasurer of the United States pays the proceeds of these bonds to Mrs. Tanner, the United States Government will have discharged its contractual obligations in respect to these bonds.

However, Mrs. Mildred G. Tanner in a deed and separation agreement between her and her husband, Ernest M. Tanner, relinquished, quitclaimed and conveyed for a valuable consideration all of her right, title and interest in these Savings Bonds to her husband, Ernest M. Tanner. Mildred G. Tanner and Ernest M. Tanner accepted and took into their respective possession the property granted them by

the deed and separation agreement. Ernest M. Tanner died about five months later with these bonds payable to "Mr. Ernest M. Tanner or Mrs. Mildred M. (sic) Tanner" in his possession. Upon such facts, the estate of Ernest M. Tanner is equitably entitled to the proceeds of these bonds. The United States Government is in no sense a party to this litigation, and can have no interest in its result. As clearly stated by the authorities we have quoted above, the federal statutes and Treasury Regulations under which these bonds were issued do not apply to the rights of the estate of Ernest M. Tanner, which is the equitable owner of the proceeds of these bonds, when the proceeds of these bonds are paid by the Treasurer of the United States to Mrs. Mildred G. Tanner, and do not prevent this Court from declaring a resulting trust in the proceeds of the bonds in the hands of Mrs. Mildred G. Tanner, when she cashes them, for the benefit of the estate of Ernest M. Tanner. Annotation 51 A.L.R. 2d pp. 163-200, entitled "Imposition or declaration of constructive or resulting trust in United States Savings Bonds"; *Henderson v. Bewley*, (Ky.), 264 S.W. 2d 680, 51 A.L.R. 2d 159, *certiorari* denied 348 U.S. 926, 99 L. ed. 726; *Anderson v. Benson*, 117 F. Supp. 765; *Union Nat. Bank v. Jessell*, 358 Mo. 467, 215 S.W. 2d 474; *Makinen v. George*, 19 Wash. 2d 340, 142 P. 2d 910.

The Superior Court below is directed to enter a judgment that, according to the federal statutes and Treasury Regulations under which the Savings Bonds in suit were issued, Mrs. Mildred G. Tanner, the surviving co-owner, is vested with the sole legal ownership of these bonds and is the only person entitled to receive cash for them from the Treasurer of the United States, and ordering her to cash them, but when she receives payment of these Savings Bonds from the Treasurer of the United States, the proceeds from such bonds in her hands shall be impressed with a resulting trust for the benefit of the estate of defendant's testate, Ernest M. Tanner, and she shall deliver the proceeds obtained from cashing the bonds to the said executor in accordance with her conveyance of these bonds to Ernest M. Tanner during his lifetime for a valuable consideration, which trust grows out of the deed and separation agreement between her and her deceased husband, Ernest M. Tanner, a deed and separation agreement with which the United States Government had nothing to do, and of which equity and fair dealing require performance.

There are no exceptions to the findings of fact by the Judge. Therefore, it will be presumed that they are supported by competent evidence, and are binding on appeal. *Goldsboro v. R. R.*, 246 N.C. 101, 97 S.E. 2d 486; *James v. Pretlow*, 242 N.C. 102, 86 S.E. 2d 759.

Neither the plaintiff nor the defendant requested the Judge to make any additional findings of fact, and excepted for failure of the Judge to do so. Plaintiff in her brief undertakes to discuss a question which is not supported by any assignment of error based on an exception. In a case like this, the Supreme Court is an appellate court, and it "has universally held that an assignment of error not supported by an exception is ineffectual." *Barnette v. Woody*, 242 N.C. 424, 88 S.E. 2d 223.

The findings of fact do not support the Judge's conclusion of law and judgment. Appellant's assignments of error are sustained. The judgment below is reversed.

The Judge's findings of fact are amply sufficient to sustain the judgment we have directed to be entered in the Superior Court.

Reversed and Remanded with Directions.

RODMAN, J., dissenting. When the bonds in question were purchased, a contract was made with the Government which was binding on the parties. *Ervin v. Conn*, 225 N.C. 267; *Watkins v. Shaw*, 234 N.C. 96; *Wright v. McMullan*, 249 N.C. 591. Pertinent Federal regulations provide: "Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in the regulations in this part and then only in the manner and to the extent so provided." 31 C.F.R. 315.15.

"No judicial determination will be recognized which would give effect to an attempted voluntary transfer *inter vivos* of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving co-owner of a savings bond, and all other provisions of this subpart are subject to this restriction." 31 C.F.R. 315.20.

The regulations contain ample and explicit provisions for surrender or reissue.

When the separation agreement was signed and plaintiff relinquished her legal right to the bonds, because she had furnished a part of the purchase price, she did not foreclose her right to receive the benefits of a contract which her husband might voluntarily maintain for her benefit.

There is no suggestion that plaintiff did anything to prevent her husband from exercising his right to terminate the contract which required payment to her on his death. The separation agreement surrendering plaintiff's legal right to surrender the bonds and receive payment was an incomplete *inter vivos* transfer which could have been completed at any time by deceased by a mere surrender of the

bonds with a request for payment or reissue. He elected not to exercise his option to terminate plaintiff's contractual rights. Plaintiff's right to cash the bonds for her benefit was complete and became a vested right the moment her husband died. That right ought not to be defeated by mandate of this Court based upon some assumed equity. If we are to follow our own decisions and the majority of the courts of this country, the judgment should be affirmed. My vote is to that effect. If, however, the judgment is not affirmed on the facts found, defendant should not be adjudged the equitable owner and plaintiff a mere trustee until that intent of her deceased husband has been ascertained.

Plaintiff alleges in her pleadings her husband intended that she should receive the bonds or proceeds upon his death. To support her allegation she offered evidence tending to show that the affection engendered by more than a quarter of a century of married life did not terminate the moment the separation agreement was executed but continued until the death of the husband. She also offered evidence to show that her husband was informed of his right to surrender the bonds and the effect of his failure to do so.

The court excluded the evidence offered by plaintiff to establish the alleged intent of her husband to vest her with both legal and beneficial ownership of the funds. Some of the evidence offered was incompetent because of its source, but that was not true as to all the evidence; and the evidence was not excluded because of its source but because the court deemed it irrelevant and immaterial as the rights of the parties were fixed by the provisions of the bonds themselves.

The Court effectively disposes of the question of the intent of Ernest M. Tanner by this sentence: "Plaintiff in her brief undertakes to discuss a question which is not supported by any assignment of error based on an exception." Presumably the quoted sentence is directed to that portion of appellee's brief stating: "We agree with the trial court that the Appellee is entitled to the bonds as a matter of law and the intention of the decedent is not material. However, if we are found to be in error we respectfully urge that the decision of the trial court should not be reversed but the case should be sent back for a new trial in order that this evidence of the decedent's intentions may be considered and appropriate findings made."

Appellees are not expected to assign errors or take exceptions to judgments favorable to them. When, as here, the court has concluded that the facts found suffice for a judgment establishing plaintiff's ownership, plaintiff is not required to except to the failure to find ad-

ditional facts to support the judgment in order to preserve his right to have the essential facts ascertained in accord with the evidence.

If the judgment is not affirmed on the facts found plaintiff is, in my opinion, entitled to have a jury ascertain the intent of deceased. Did he, as alleged by plaintiff, intend that she should in her own right and not as trustee collect the bonds? If such was in fact his intent, the mandate of this Court requiring her to forego that right is not in the furtherance of justice.

BOBBITT AND HIGGINS, J. J., concur in dissent.