### J. M. FAIRES, EMPLOYEE
### v.
### McDEVITT AND STREET COMPANY,
EMPLOYER; TRAVELERS INSURANCE COMPANY, CARRIER.

(Filed 11 November, 1959)

**1. Master and Servant § 40g—**

Injury resulting in a hernia is compensable only if it is definitely proven that the hernia was the result of an injury arising out of and in the course of employment, that it occurred suddenly, that it was accompanied by pain, that the hernia immediately following an accident, and that the hernia did not exist prior to the accident. G.S. 97-2 (r).

**2. Same—**

Where an injury resulting in hernia is suffered by employee while performing his usual duties in the regular and customary manner, such injury is not caused by accident, but if the employee's routine is interrupted in such manner as to introduce unusual conditions likely to result in unexpected consequences, and hernia results therefrom. the injury causing the hernia is the result of an accident within the meaning of the Compensation Act.

**3. Same— Evidence held sufficient to support finding that hernia resulted from an accident.**

Evidence tending to show that the employee was a carpenter and customarily did the work of a carpenter, that in removing concrete forms carpenters usually "stripped" the forms and laborers lifted and removed them, that on the occasion in question other carpenters and helpers had been withdrawn from the job, that the lifting of the forms was usually and customarily done by two men, and that while the employee was attempting to lift one of the forms by himself, requiring extreme exertion and strain in a confined and difficult place of work, he felt a sharp pain which continued until he had received medical treatment for the hernia, *is held* sufficient to support a finding of the Industrial Commission that the employee suffered an injury by accident arising out of and in the course of his employment, resulting in the hernia.

**4. Same—**

Testimony of a physician that he treated plaintiff for several months prior to the accident and did not find what he thought was a definite hernia, together with testimony of the surgeon who treated the employee after the accident that from the history given him by the employee the hernia on the left side had no relation to the accident but that the employee then had a hernia on both sides, is sufficient to support the finding of the Industrial Commission that the hernia on the right side did not exist prior to the accident.

**5. Master and Servant § 55d—**

Where there are no exceptions in the record on appeal to the Supreme Court to the failure of the Superior Court to pass upon certain ob-

jections and exceptions taken by the party in the hearing before the Industrial Commission, the matter is not before the Supreme Court on the appeal taken by the adverse party.

HIGGINS, J., not sitting.

APPEAL by plaintiff from *Sharp, S. J.,* March, 1959 Special Civil Term, of MECKLENBURG.

This proceeding was instituted by plaintiff employee under the Workmen's Compensation Act to recover compensation for hernia which he alleges resulted from accident arising out of and in the course of his employment by defendant employer.

After due notice a hearing was had 5-7 March 1957 before Gibbs, Commissioner, in Charlotte. It was stipulated that the employer-employee relation existed between plaintiff and defendant, that all parties are subject to and bound by the Workmen's Compensation Act, and Travelers Insurance Company is insurance carrier for employer.

Plaintiff's evidence in summary tends to show: Plaintiff is 61 years old and is a carpenter. On 6 September 1956 he was working on a drain in a basement at the Park Road Shopping Center. He and a "bunch of fellows" were stripping forms. The forms were concrete forms, known as "Universal forms." They had been set in the drain and concrete had been poured. The carpenters and helpers were using crowbars and hammers to remove the forms from the concrete and pull nails from the bottoms of the forms. In the afternoon all the workers were sent elsewhere except plaintiff and a helper, who were left to continue the work in the drain. The drain was an "L" shaped hole or tunnel, 4 feet wide and 5 feet deep. One end of the "L" was about 20 feet long, the other end about 25 feet. There was about 4 inches of water in the bottom of the tunnel. After the other workers left it was the task of plaintiff and his helper to lift the forms out of the tunnel. Plaintiff remained in the tunnel to hand the forms to the helper outside and at the rim of the tunnel. The forms were 2 feet wide, 5 feet long and about 3 inches thick; they had metal binding around them with facings of 5/8 inch plywood. They weighed 110 pounds, but when wet and smeared with concrete, as these were, they weighed much more. Plaintiff put down 4 or 5 forms to stand on so he would not have to stand in water. This put the bottoms of the forms he had to lift 6 inches below his feet. To lift a form he would bend over and stand it on end, take hold of the metal about 18 inches from the bottom and lift the form to his left knee, then while in a squatting position take the bottom by both hands, at which time the helper would take the top and together they would lift it upward, and

plaintiff would lift and shove until his hands were straight up above his shoulders 6 inches above his head. The second form plaintiff lifted in this manner was wet and slick, had a film of concrete on it and weighed about 150 pounds. Plaintiff weighed 150 pounds. As he lifted it from his knee in a squatting position, he felt a sharp pain in the right side about the groin, a "pull" in his side. This was about 3:00 P. M. It continued to hurt as he lifted the form. He made an outcry. His side continued to hurt and pain him that afternoon. He worked until quitting time, 4:30 P.M. After he was hurt he lifted 12 or 15 more of the forms. The job he was doing at the time he felt the sharp pain was a laborer's job. Plaintiff's customary duty as a carpenter was to strip the forms, not to lift them. The lifting job he was doing was customarily done by two men, not one as in this case. Lifting forms was not a part of his regular duties. The forms were too heavy for one man to handle. He was suffering pain when he went home that night. He was sore, his groin was swollen and he had a "ridge" from groin to groin. He hurt continuously through the night and until he went to the doctor on September 11. He did not report the matter on the day he first experienced the pain. He worked the next day but did not report it then. He did not return to work until after his operation on October 10. Upon examination by the doctors it was found that he had a double hernia. In the preceding August he had complained of straining himself while putting up ceiling and had gone to a doctor, but the doctor did not find a hernia then. The hernia was corrected by surgery and he did not return to work for several weeks and then did only light work.

The hearing Commissioner found as a fact: ". . . that plaintiff was employed . . . as a carpenter; that his regular duties were to do general carpenter work; that he was 61 years old and weighed approximately 150 pounds; that his foreman assigned him the duty of lifting concrete forms out of a ditch . . . that this work was usually done with the help of an assistant . . . that plaintiff did not have an assistant on this day . . . about 3 P. M. on said day, plaintiff lifted a wet concrete form which weighed approximately 150 pounds; that he lifted and handled this form in the same manner in which he had lifted and handled the other forms on said day . . . that when he lifted this particular form from his knees upward, being in the same strained, stooped, and awkward position he had been in when he lifted the other forms, he felt a sharp pain in his right groin and suffered an injury thereto. . . . that in the way and manner above described plaintiff sustained an injury by accident arising out of and in the course of his employment by the defendant employer, resulting in a right

FAIRES *v.* MCDEVITT AND STREET CO.

inguinal hernia; that said hernia appeared suddenly; that it was accompanied by pain; that it immediately followed an accident; and that it did not exist prior to the accident for which compensation is claimed." There were also findings of fact concerning the size and condition of the ditch or tunnel, the size, shape, weight and condition of the forms, the manner of lifting the forms and the nature of the hernia and the operation for correction thereof, all in accordance with the evidence hereinbefore summarized.

The hearing Commissioner then concluded as follows: "That on September 6, 1956, plaintiff sustained an injury by accident arising out of and in the course of his employment by the defendant employer, resulting in a right inguinal hernia; that said hernia appeared suddenly; that it was accompanied by pain; that it immediately followed an accident; and that it did not exist prior to the accident for which compensation is claimed. G.S. 97-2(f); G.S. 97-2(r); *Smith v. Creamery Co.,* 217 N.C. 468; *Edwards v. Publishing Co.,* 227 N.C. 184." There were other conclusions of law not pertinent to this appeal.

Upon the findings of fact and conclusions of law compensation was awarded on 12 April 1957.

Defendant and carrier appealed to the Full Commissoin. After hearing, the Full Commission on 27 August 1957 adopted as its own the findings of fact and conclusions of law and award of the hearing Commissioner, and so ordered.

From the award of the Full Commission defendant and carrier appealed to the Superior Court.

At the term above indicated, Judge Sharp heard the appeal and entered judgment, the pertinent parts of which are as follows:

". . . the undersigned . . . is of the opinion, and so holds, that there is no competent evidence disclosed on said transcript and record to show that the performance of the labor of the plaintiff, J. M. Faires, at the time he suffered the hernia, was being performed in other than the usual and customary manner; and that the conclusion of law of the North Carolina Industrial Commission that the plaintiff suffered an injury by accident arising out of and in the course of his employment, resulting in a hernia, is not supported by any competent evidence.

"It is therefore, ORDERED, ADJUDGED AND DECREED that the plaintiff recover nothing of the defendants, or either of them, and that the Orders or Awards of the North Carolina Industrial Commission dated August 28, 1957, be and the same are hereby vacated and this action dismissed."

From the foregoing judgment plaintiff appealed to Supreme Court, assigning errors.

*Carswell & Justice and Richard E. Thigpen, Jr., for plaintiff, appellant.*

*B. Irvin Boyle and J. J. Wade, Jr., for defendants, appellees.*

MOORE, J.   This appeal poses one question: Does the evidence in the record support the findings of fact of the Industrial Commission and its conclusions of law based thereon that plaintiff suffered an injury *by accident* arising out of and in the course of his employment, resulting in a hernia?

An employee's injury resulting in a hernia is compensable only if it be definitely proven: (1) that he received an injury arising out of and in the course of his employment, resulting in hernia; (2) that the hernia appeared suddenly; (3) that it was accompanied by pain; (4) that the hernia immediately followed an accident; and (5) that the hernia did not exist prior to the accident. G.S. 97-2(r). *Hensley v. Cooperative*, 246 N.C. 274, 277, 98 S.E. 2d 289; *Rice v. Chair Co.*, 238 N.C. 121, 123, 76 S.E. 2d 311.

Appellant contends that all five requirements are proven by competent evidence appearing in the record. Appellees insist that the fourth and fifth requirements have not been shown to exist in this case.

If an employee, while performing his regular duties in the "usual and customary manner," receives an injury resulting in a hernia, such injury is not caused by accident and is not compensable. *Holt v. Mills Co.*, 249 N.C. 215, 105 S.E. 2d 614; *Hensley v. Cooperative, supra.*

*Moore v. Sales Co.*, 214 N.C. 424, 190 S.E. 605, is controlling in the instant case. In the *Moore* case plaintiff was a foreman but was also required to do manual work in installing plumbing. On the day of his injury all workers were laid off except plaintiff and one Sykes, a helper. They were ordered to complete the job. They attempted to lift a steel pipe weighing 400 to 450 pounds. Plaintiff suffered a sharp pain in his abdomen and it was found that he had received a hernia. Prior to that time plaintiff had been doing the same general type of work but with different type of materials and had not previously lifted pipes of this type and weight. *Seawell, J.*, speaking for this Court said at pages 429 and 430:

"In the case at bar the evidence discloses that while the operation of handling and lifting pipes was done in the ordinary manner, and even that the plaintiff had lifted pipes in that way before, two things occurred which, taken together, were out of the ordinary, and are sufficient, we think, to bring into the transaction the element of unusualness and unexpectedness from which accident might be inferred. In this particular case, by order of a

superior, all other employees except plaintiff and Sykes were discharged, and these were left alone to do the heavy lifting. While Sykes had handled that type of pipe and perhaps piping of that weight before, the plaintiff had not. On the contrary, he was required to lift piping of a type and of a weight he had never before lifted, and it may be inferred from the testimony of Sykes that this was caused by the laying off of all other employees, which left them short-handed. From the evidence, his effort to lift the pipe was immediately followed by an injury.

"In the case at bar, there is in the foregoing sufficient evidence of the interruption of the routine of work, and the introduction thereby of unusual conditions likely to result in unexpected consequences, and these were of such a character as to justify the Industrial Commission in finding that plaintiff's injury was the result of accident."

It will be observed that the elements constituting "accident" as set out in the *Moore* case were "the interruption of the routine of work, and the introduction thereby of unusual conditions likely to result in unexpected consequences." The same elements exist with equal definiteness in the case at bar. The work plaintiff was doing at the time he received his injury was usually done by laborers. As a carpenter he did not customarily do this type of work. On a job of this kind carpenters usually "stripped" the forms and laborers lifted and removed them. On this occasion the other carpenters and helpers had been withdrawn from the job. Furthermore, the task plaintiff was performing in lifting the forms was usually and customarily done by two men. The forms were heavy and the lifting required extreme and unaccustomed exertion and strain. The fact that there were numerous forms to be lifted in this unusual task is not important. The crucial facts are: (1) plaintiff's routine of work had been interrupted and he was required to undertake a task that was not usual and customary; and (2) unusual conditions likely to result in unexpected consequences were introduced—an unusual task, requiring extreme exertion and strain in a confined and difficult place to work, which task was usually performed by two men instead of one. Therefore the resulting injury immediately followed an accident. See *Rice v. Chair Co., supra.*

We next inquire as to whether or not the hernia existed before the accident. The Commission found that it did not.

Dr. H. L. Seay gave testimony that he treated plaintiff for several months before the accident and examined him afterwards. He stated that plaintiff was suffering from hypertension and congestive heart. The doctor further testified: "He consulted me . . . for pain or hurt-

ing in the groin on either side. I believe that was on August 20th. . . . I did not find what I though was a definite hernia or rupture and I did not attach too much importance to it. He was complaining of chronic constipation and arthritis in the neck, some shortness of breath and a discomfort in his stomach. . . . I did casually examine the abdomen and groins on August 20th but did not give him any intensive examination. I did not see a hernia on either side at that time. I did not see any obvious evidence of hernia such as a bulge or swelling in either groin.

Dr. John P. Kennedy, the surgeon who performed the operation, testified: "I examined him on September 11th and he had a small inguinal hernia on the left side and a beginning inguinal hernia on the right side. In my opinion the lifting of these forms in the manner in which the plaintiff said he lifted them could or might have caused the condition I found. . . . From the history he gave me the hernia on the left side had no relation to this injury he said he suffered on September 6, 1956. As far as I know it was not related. . . . he did have hernia on both sides."

The Commission awarded compensation only for the hernia on the right side. The foregoing evidence is competent and supports the finding that the hernia on the right side did not exist prior to the accident on September 6, 1956.

In appellees' brief the following question is asked: "If the Supreme Court reverses the ruling of the Superior Court, then may the Supreme Court consider those objections and exceptions of the Appellees to the Order and Award of the North Carolina Industrial Commission which were not passed upon by the Superior Court but which appear fully in this record?"

The record does not disclose that any exception was taken to the failure of the judge in Superior Court to pass upon these objections and exceptions. They are not before us. *Tanner v. Ervin,* 250 N.C. 602, 614, 109 S.E. 2d 460. However, consideration has been given to the matters referred to and they are found to be without merit. The Commission's findings of fact are supported by competent evidence and these findings support its conclusions of law and award.

The judgment below is reversed and this cause is remanded with instructions that a judgment be entered affirming the Commission's award.

Reversed and remanded.

HIGGINS, J., not sitting.