### BARRETT v. BARRETT et al.

Civ. No. 26037.

United States District Court
N. D. Ohio, E. D.

May 3, 1950.

Paul P. Sogg, Cleveland, Ohio, for plaintiff.

Ellis R. Diehm, Cleveland, Ohio, for defendants.

MILLER, Circuit Judge.

The plaintiff, John B. Barrett, brought this action in equity against his former wife, Delphine S. Barrett as defendant, and her brother, John J. Sullivan as co-defendant, for a disclosure of the contents of a safety deposit box taken by Delphine S. Barrett on September 30, 1946, which the plaintiff claims was his property, for an accounting of the property so taken, and for a return to the plaintiff of property alleged by him to have been so appropriated without authority. The defendant, Delphine S. Barrett, by her answer claims that she returned to the plaintiff the personal property in the safety deposit box which belonged to him; that the remainder of the personal property so taken belonged to her by virtue of a gift from the plaintiff to her; that $7,700 of it had been used to purchase a home and household furnishings for the use of herself and her three children; that although the title to the real estate so purchased had been taken in the name of the co-defendant John J. Sullivan, the beneficial interest to the same belonged to her and the children; and that the plaintiff has no valid claim to the property so taken from the safety deposit box and not already returned to the plaintiff. The defendant also claimed that on October 4, 1945 the plaintiff compelled her to withdraw from her individual bank account and turn over to him approximately $1,230.92, which was her individual property, for which amount she sought judgment against the plaintiff. The action was treated by the District Court as an equitable one with the result that defendant's request for a jury trial was overruled and the case was heard by the Court without a jury. Defendant waived trial by jury on her cross-claim against the plaintiff. The Court finds the facts and conclusions of law applicable thereto as follows:

### Findings of Fact.

The plaintiff and the defendant were married on July 6, 1935 and thereafter made their home in New Castle, Pennsylvania. They separated on September 29, 1946, following which the wife moved to Cleveland, Ohio. She obtained a divorce from the plaintiff in Pennsylvania on January 17, 1947. Their three children, approximately 11, 9 and 5 years of age at the time of the trial, lived with the mother. Plaintiff filed this action on November 22, 1948, at which time he was a citizen of Pennsylvania, and the defendants were citizens of Ohio. The amount in controversy is more than $3,000 exclusive of interest and costs.

The plaintiff was and is a successful doctor in New Castle, Pennsylvania. He entered the armed services on or about September 19, 1942 and thereafter until September 1945 was continuously away from home in New York, San Francisco and on the high seas. He executed and delivered to his wife a Power of Attorney to handle his affairs during his absence. On September 24, 1942, the wife leased from the Union Trust Company of New Castle, Pennsylvania, a safety deposit box in her name with right of access thereto in the husband upon qualifying by signing the contract, which, however, was never done by him. On May 14, 1946, a new contract for the same safety deposit box was executed in their joint names, and thereafter both parties had access thereto.

In September 1942, the plaintiff purchased $5,000 of Government bonds and placed them in his own name, $5,000 of Government bonds which he placed in the name of his daughter Delphine, and $5,000 worth of Government bonds in the name of his son Michael. The bonds were placed in the safety deposit box. The ownership of these bonds is not in dispute, and the bonds in the name of the plaintiff are in his possession.

In December 1942, the wife purchased, with available funds of the husband, $5,000 of Government bonds, issued to Bearer, which were placed in the safety deposit box.

In June 1945, while the husband was in San Francisco, the wife decided there should be a change in one of the husband's previous investments. She wrote him to that effect and he replied by agreeing and telling her to do as she saw fit in the matter. She sold the investment and used the proceeds, to which she added about $25, in purchasing four $1,000 and eight $100 Government bonds issued in the name of the husband "or" wife. She placed them in the safety deposit box.

The wife also at another time purchased three $100 Government bonds which she had issued in the name of the husband "or" wife and placed them in the safety deposit box.

In June 1946, the husband purchased $5,000 of Government bonds which he had issued in the name of the husband "or" wife. In turning them over to his wife, he told her that since she did not want a fur coat or an automobile she could have the bonds instead and do what she wanted with them. They were placed in the safety deposit box.

There was also placed in the safety deposit box some Government bonds in the name of the children, some insurance policies of the children, and other miscellaneous papers.

There was also in the home of the couple a strong box in which was kept miscellaneous cash. At the time of the separation, there was approximately $300 in cash in this box which the wife took with her.

The wife had no independent source of income. She gave assistance to her husband in the performance of his professional duties by answering the phone at their home and taking care of calls to him when he was absent from the home. All of the bonds above referred to were purchased with money earned by the husband. The bonds purchased in the joint names of husband "or" wife were not interest-coupon bonds, but were bonds purchased at a discount from their maturity face value. While the husband was in the Army approximately two-thirds of his monthly pay was sent by the Government to the wife, who used so much of it as was necessary

for the support and maintenance of herself and the children. The wife kept the husband fully advised of the transactions which she handled during his absence.

The defendant had a savings account in the First National Bank of Lawrence County, opened on October 14, 1935. It contained $975 when the plaintiff entered the Army. During his absence she deposited a refund of $537.87 which was obtained through an overpayment of income tax by the husband, and some small collections which she made of outstanding accounts owed to the husband. She withdrew $450 during his absence. After the husband's return to civil life, he told her that he needed the money to buy a new car for use in his business and at his request she withdrew on October 4, 1945 the entire balance of $1,230.92 and turned it over to him.

The marriage proved unsuccessful after the plaintiff returned from military service and ultimately ended in a vigorous quarrel and separation on the evening of September 29, 1946. At 9:02 a. m. September 30, 1946, the wife went to the Union Trust Company, secured access to the safety deposit box and withdrew the entire contents of the box. She went to the office of her attorney and left with him for delivery to her husband various papers and documents which she recognized as his property. This included insurance policies, the deed to the home, and $5,000 of Government bonds issued in his name. On or about October 2, 1946, she moved to Cleveland, Ohio, taking the remaining contents of the safety deposit box with her. The plaintiff did not learn of the removal of the contents of the safety deposit box until about two weeks after its occurrence.

Following the separation and before the divorce, the plaintiff paid his wife $400 a month for the support and maintenance of herself and the children. In the divorce decree this amount was fixed at $300 per month, which the plaintiff has continued to pay. The divorce decree did not adjudicate or settle the ownership of, or the property rights of, the parties in any of the bonds taken from the safety deposit box by the wife. In December 1948, the wife's rights in the home in Pennsylvania were settled by a sale of the real estate, from which the wife received a gross of $8,000, with a net of approximately $5,900 after payment by her of attorney's fees and expenses.

After moving to Cleveland, the wife turned in to the Government for their cash surrender value of $7,700 the Government bonds which she had taken from the safety deposit box and which had been issued in the name of the husband "or" the wife. She used $6,000 of these proceeds as a down payment on a home for herself and the children and the remaining $1,700 for furniture for the home. The title to the real estate so purchased was taken in the name of the co-defendant John J. Sullivan, her brother. There is a mortgage on the property in the approximate amount of $7,000.

The defendant did not cash, but has continued to keep in her possession, the $5,000 Government bonds issued to Bearer. She also has in her possession the Government bonds and insurance policies of the children.

## Discussion.

The issue involved is whether the defendant obtained title to any or all of the bonds by virtue of a gift from plaintiff to her. Defendant's counsel has attempted to practice the case as though it was a settlement of property rights in the divorce proceedings, urging upon the Court the financial success and independence of the plaintiff and his large earning capacity as a successful physician, the limited financial resources of the defendant and her need for the property in order to adequately or comfortably support and maintain the family. He has attempted to inject into the case the details of their unhappy marriage, the reasons behind the divorce proceedings, and the alleged cruel treatment of the defendant by the plaintiff. We consider those facts immaterial to the present issue. No doubt it would have been advisable for the ownership of the bonds in question to have been disposed of by the divorce proceedings in Pennsylvania, in which proceedings such

facts and issues would have had the consideration of the Chancellor in attempting to make an equitable disposition of the case. But since it was not disposed of in the divorce proceedings, we have for decision in this case merely the question of legal title. The bonds in controversy were purchased with the money of the plaintiff, and they are still his bonds unless the defendant acquired title to them by gift from him to her. Equitable considerations dealing with what the plaintiff should have done for his wife and children in the divorce proceedings, or what he should do now, in addition to the $300 per month payment required by the divorce decree, are not part of the decision in this case.

## Conclusions of Law.

Jurisdiction exists by reason of diversity of citizenship and the amount in controversy. Sec. 1332, Title 28 U.S.C.A.

█ Possession of the bonds by the defendant for safe keeping does not constitute a gift from the plaintiff to the defendant. Nor does the present physical possession obtained through an unauthorized removal from the safety deposit box invest the defendant with title. In order to constitute a gift the evidence must clearly show an intention on the part of the donor to make the gift and a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control of the subject matter of the gift.

█ The $5,000 Government bonds purchased in December 1942 and issued to Bearer are the property of the plaintiff. The bonds were placed with the defendant for safe keeping and not by way of a gift. The evidence is insufficient to show an intent on the part of the plaintiff to divest himself of his property interest in them. Defendant's contention that she is entitled to hold them for the benefit of their daughter Sheilah, who was the only one of the three children who had not received such a gift from their father, is not supported by the facts. The prior gifts of $5,000 of bonds to each of the other two children,

Delphine and Michael, were definitely indicated by having the bonds issued in their respective names. A different procedure was followed with the Bearer bonds in question. The evidence does not in any way indicate any intention to make a gift of these particular bonds to Sheilah. If the plaintiff desires to make such a gift, he can still do so.

█ The $4,800 Government bonds purchased in June 1945 and issued in the name of the husband "or" wife are the joint property of the plaintiff and defendant. There is no evidence supporting any ownership of the defendant in the investment of the plaintiff which the defendant decided should be sold. The reinvestment of the proceeds in their joint names, with the consent of the plaintiff, was sufficient to invest the defendant with a half interest in the bonds so purchased. There was no additional consent on the part of the plaintiff that the bonds be cashed for their surrender value and the entire proceeds therefrom be appropriated by the defendant. The ability of the defendant to cash the bonds without the husband's consent was by reason of the wording of the bonds and the Government Regulations pertaining thereto, which protected the Government in making payment to either of the authorized payees who presented the bonds for payment. The mere conversion of the bonds into cash did not change the joint ownership of the parties in the investment or its proceeds.

The $300 Government bonds purchased by the defendant and issued in the name of the husband "or" wife are the joint property of the plaintiff and defendant, for similar reasons.

█ The $5,000 Government bonds purchased in June 1946 which were issued in the name of husband "or" wife are the property of the defendant. The evidence establishes a gift of the entire interest in these bonds to the defendant.

█ The $300 in the strong box in the home was the property of the plaintiff. The evidence is insufficient to show what, if any, of the defendant's money or savings was put into the box or that the contents

of the box were at any time given to her by the plaintiff.

The defendant is not entitled to recover from the plaintiff the $1,230.92, or any part thereof, which she withdrew from her savings account and turned over to him. A substantial portion of it was the plaintiff's money. The evidence fails to show that its transfer to the husband was regarded by either of them at the time as a loan, or that it was to be repaid in any way.

The insurance policies and bonds of the children will be retained by the party who has the custody of the children, at present the defendant, in the absence of the appointment of a guardian for them.

Counsel for plaintiff will tender appropriate decree for entry.