HENDERSON'S ADM'R v. BEWLEY.

WITCHELL v. HENDERSON'S ADM'R.

SANDERS v. HENDERSON'S ADM'R.

Court of Appeals of Kentucky.

Dec. 18, 1953.

Rehearing Denied March 5, 1954.

Marshall Funk, Bowling Green, for appellant John Henderson.

Myers & Logan, Rodes K. Myers, Bowling Green, for cross-appellee Irvin B. Bew-

ley and appellants Helen Witchell and Elmer Sanders.

## CAMMACK, Justice.

These three consolidated actions involve the ownership of twenty $1,000 United States Savings Bonds, Series E. John Henderson is the administrator of the estate of his deceased wife, Minnie Henderson, who died intestate in May, 1952. He claims all of the bonds. Irvin Bewley claims fifteen of them; Helen Witchell claims two; and Elmer Sanders claims three. The appeals challenge the correctness of the chancellor's ruling that John Henderson owns ten of the bonds and Irvin Bewley ten of them.

John Henderson and Minnie Mae Young were married in 1892. Minnie had no property or money, nor did she receive any during marriage except that given to her by John. John conveyed a one-half interest in his property to Minnie, with a survivorship agreement, and turned his pay check over to her each payday. Minnie had complete control over all the finances during her life.

Minnie was an astute businesswoman. John had only a second grade education and manifested little, if any, business acumen. Minnie started dealing in real estate with the approval of John, who assisted in reconditioning the property. The profits she realized from these transactions were deposited in the couple's joint bank account. By 1947 they had in their joint bank account and private lock box approximately $20,000. The record does not show whether this money was the savings from John's 60 years of labor—40 years as a machinist with the railroad and 20 years with various local employers as a common laborer—or a combination of his labor and the profits from the property transactions of Minnie. John claims that this was his money that he turned over to Minnie, who did all the banking.

From the savings, Minnie bought the twenty $1,000 bonds in dispute. Ten of these were put in the name of Minnie Y. Henderson or John I. Henderson and the remaining ten were put in Minnie's name only.

On May 5, 1951, Minnie cashed the ten bonds registered in her and John's names. She purchased with this money two $1,000 bonds and had them issued to Mrs. Minnie Y. Henderson or Mrs. Helen Witchell. She purchased three other $1,000 bonds in the name of Mrs. Minnie Y. Henderson or Elmer Sanders. She purchased five $1,000 bonds and had them issued to Mrs. Minnie Y. Henderson or Irvin B. Bewley. On September 21, 1951, Minnie cashed the remaining ten $1,000 bonds which were in her name only, and purchased new bonds and had them issued to Mrs. Minnie Y. Henderson or Irvin B. Bewley.

All of the purchasing and selling of bonds was done by Minnie without the approval or knowledge of John, or any of the other parties to this suit. There is some evidence that John overheard her say two weeks before she died that she had purchased bonds with their money. The reason he gave for not saying anything at the time was that he did not want to disturb her because she had been suffering from cancer for two years and had to take narcotics to allay the pain. There is testimony to the effect that she was mentally deranged at times during these two years of sickness, because of pain, narcotics and age. During these years she expressed the belief that John was running around with other women and she was afraid he would squander their savings.

It is well to note Minnie's unusual behavior concerning her lock boxes. The record shows that Minnie rented a number of lock boxes. Upon surrendering one, she would rent another, at times in her maiden name, and at others in the name of her mother, but always for the sole benefit of Minnie, with instructions not to give out information or mail anything that would indicate her ownership of a box.

Upon being appointed administrator of Minnie's estate, John opened the lock box and found the twenty bonds in dispute instead of the cash which he expected. He refused to surrender these bonds to the

named payees, and as a result this litigation followed. Helen Witchell and Elmer Sanders, two of the plaintiffs, are daughter and son of Minnie Henderson's half sister. Irvin B. Bewley, the other plaintiff, is a son of a niece of John Henderson, whom the Hendersons took into their home shortly after birth and raised, but never legally adopted him.

The lower court declared a constructive trust in favor of John Henderson of the ten bonds that were originally in John or Minnie Henderson's name. This included the two bonds in Helen Witchell's name, the three bonds in Elmer Sanders' name and the five bonds in Irvin B. Bewley's name. The remaining ten bonds were given to Irvin B. Bewley. However, they were to remain in the possession of John, the administrator, until Irvin Bewley accounts to John for five of the bonds which are in his name, but to which he is not rightfully entitled, because the court declared them to be the property of John. All of the bonds are in John's possession, but because of the contract with the United States Treasury Department, only the payee can receive payment.

■ The general proposition that a constructive trust can be declared in favor of one who has been defrauded is recognized in McCracken County v. Lakeview Country Club, 254 Ky. 515, 70 S.W.2d 938. The question for our determination is, Can a constructive trust be declared in United States Savings Bonds, Series E, in favor of a defrauded person? The question is answered in the affirmative in the cases of Katz v. Driscoll, 1948, 86 Cal.App.2d 313, 194 P.2d 822; and Ibey v. Ibey, 1945, 93 N.H. 434, 43 A.2d 157.

■ When Minnie took the money from their joint lock box without John's knowl-edge, she practiced a fraud upon him; therefore, a constructive trust should be imposed, in his favor, upon the ten bonds; two of which were in Minnie's or Helen Witchell's name; three in Minnie's or Elmer Sanders' name; and five in Minnie's or Irvin Bewley's name.

Since the money that went into the purchase of the bonds came from the joint efforts of John and Minnie Henderson, Minnie would have been legally entitled to give her half to whomever she desired. The question now arises, Could she, or did she, legally give her share to Irvin Bewley? In the case of Moore's Adm'r v. Marshall, 302 Ky. 729, 196 S.W.2d 369, 168 A.L.R. 241, the question was discussed, and it was decided that United States bonds cannot be the subject of an inter vivos gift. There is some authority that United States bonds can be transferred by gift causa mortis. Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131 S.W.2d 69. But in the case at bar the essential element of delivery, either actual or constructive, is absent. 24 Am.Jur., Gifts, sections 26, 27 and 28.

■ As Minnie failed in her attempt to give away her one-half interest in the bonds, it follows therefore that they will pass by intestate succession, five going to John and five going to her lawful heirs. KRS 392.020. The chancellor should enter an order directing the named payees to sign the bonds.

On the appeal of John Henderson, the judgment is reversed, to the extent that he is entitled to fifteen of the bonds, with directions that a judgment be entered consistent with this opinion. On the appeals of the other parties, the judgment is affirmed.