**William H. MARCUM et al., Appellants,**

**v.**

**Chloey MARCUM, Individually, etc.,**
**Appellee.**

Court of Appeals of Kentucky.

March 20, 1964.

CLAY, Commissioner.

In this declaratory judgment action the ownership of certain government bonds is in issue. The trial court, on the authority of Henderson's Adm'r v. Bewley, Ky., 264 S.W.2d 680, 51 A.L.R.2d 159, adjudged the bonds passed as intestate property of the deceased co-owner who had purchased them.

Wyatt Marcum, over a period of years, bought a number of Series E, United States Savings Bonds. Those in controversy were issued in the joint names of "Wyatt Marcum or William Marcum", and "Wyatt Marcum or Hugh Marcum". One was issued in the sole name of Hugh Marcum. (William and Hugh were the sons of Wyatt.) These bonds were purchased with Wyatt's own funds. They were kept in his lock box in a bank until the date of his death.

The bonds were issued pursuant to 31 U. S.C.A. § 757c. Section 315.61 of United States Treasury Department Regulations,[1] which constitutes a part of the government contract, provides in part as follows:

> "If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner."

Since William and Hugh were named co-owners in the respective bonds (except the one bond in which Hugh was named the sole owner), and since they survived the other co-owner, it would seem beyond question that under the terms of the bond contract their original joint interests matured into sole ownership. This has been recognized in a vast number of cases from other jurisdictions, collected in 168 A.L.R. 241; 173 A.L.R. 550; 37 A.L.R.2d 1221; and 40 A.L.R.2d 788.

Henderson's Adm'r v. Bewley, Ky., 264 S.W.2d 680, 51 A.L.R.2d 159, apparently adopted a contrary view. In that case it

Herman E. Leick, Corbin, for appellants.

Robert H. Helton, Jr., Brown, Tooms & Helton, London, for appellee.

1. C.F.R. Title 30–31.

was held that because there had not been an actual *delivery* of the *bonds* by the purchaser to the named co-owner, there had been no *gift* to the latter and he acquired no interest in them. We can only explain this holding as the result of a misconception arising out of a complex factual situation. The opinion itself discloses a gross inconsistency because after recognizing that such a bond *cannot* be the subject of an inter vivos *gift*, it was declared this gift failed *because there was no delivery*.

The distortion of the problem involved is traceable to the concept that ownership is dependent on physical possession of the bonds, whereas, ownership is fixed by the terms of the bond contract. Questions involving *gifts of bonds* usually arise only when the purchaser of the bond, who by its terms is designated the sole owner, undertakes to transfer his ownership by manual delivery. (Which, as pointed out in the Bewley case, cannot be done.)

■ The issue we have here is not one of gift but of contract. See cases cited in 37 A.L.R.2d 1221, 1226, and 40 A.L.R.2d 788, 789. The ownership interests in the obligations represented by these bonds (the bonds are evidence of an indebtedness) were created at the time Wyatt Marcum purchased them. Even if we labelled this act as a gift of the ownership interest, it was completed by the designation of his sons as co-owners in the contract obligation. In re Haas' Estate, 10 N.J.Super. 581, 77 A.2d 523. The written instrument, which consummated the transaction, would make unnecessary the "delivery" of some token.[2]

As pointed out above, our problem does not involve the creation of rights by the transfer or failure to transfer physical possession of the bonds. It is simply a matter of determining the rights of a third party beneficiary under a contract. See Conrad v. Conrad, 66 Cal.App.2d 280, 152 P.2d 221; In re Reiner's Estate, Ohio Prob., 106 N.E. 2d 94. The law of gifts has no application.[3]

■ In Moore's Adm'r v. Marshall, 302 Ky. 729, 196 S.W.2d 369, 168 L.R.A. 241, we recognized that a United States Savings Bond is a valid and binding contract which is determinative of the rights of the parties named therein; that the Treasury regulations must be read into that contract; and that ownership is to be governed by its terms.[4] According to the terms of the bonds in controversy William and Hugh have been joint co-owners of these governmental obligations since the day they were issued, and also according to those terms, upon the death of their father their ownership became sole and absolute. (The bond issued in the sole name of Hugh has always been, and still is his.)

■ So much of the decision in Henderson's Adm'r v. Bewley, Ky., 264 S.W.2d 680, 51 A.L.R.2d 159, as is in conflict with this opinion is overruled. Not only was it inconsistent with basic general principles, but it was contrary to the federal law which governs the rights of parties under United States Savings Bonds. Our state law must yield to the federal law. Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180. See also numerous cases from other states cited in 37 A.L.R.2d 1221, 1229.

Appellee in her brief raises some question of constructive fraud and constructive trust. These contentions were not present-

---

2. It should be noted that the necessity for *delivery* is basically an *evidentiary* requirement to avoid mistake, imposition and perjury. See 24 Am.Jur., Gifts, section 24 (page 743).

3. Even considered as gifts, ownership of corporate stock may be transferred by appropriate notations on the corporate books without delivery of the stock. Kosciuszko Building & Loan Ass'n v. Kanzan, 29 Del.Ch. 385, 50 A.2d 786; Lynch v. Lynch, 124 Cal.App. 454, 12 P.2d 741.

4. It was in this case we held that the ownership interests in the bonds could not be transferred by their manual delivery.

ed to the trial court, and even if they had been, they are totally lacking in merit.

The judgment is reversed with directions to enter judgment for William and Hugh Marcum consistent with this opinion.