407 F.2d 1031
 In the Matter of Grace HAYES, Bankrupt.
The KENTUCKY COMPANY, Inc., Appellant,
v.
Grace HAYES, Appellee.
In the Matter of Grace HAYES, Bankrupt.
Portia F. SCHAEFER, Trustee, Plaintiff-Appellant,
v.
Grace HAYES, Bankrupt, Defendant-Appellee.
 No. 18316.
 No. 18317.
 United States Court of Appeals Sixth Circuit.
 March 6, 1969.
 
 John Swinford, Cynthiana, Ky., for the Kentucky Co., Inc.
 Frank D. Emerson, Cleveland, Ohio, for Portia F. Schaefer.
 Arthur L. Brooks, Jr., Lexington, Ky., for appellee; Meade & Brooks, Lexington, Ky., on brief.
 Before EDWARDS and COFFIN,* Circuit Judges, and CECIL, Senior Circuit Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 The Trustee in Bankruptcy and the sole creditor appeal from the dismissal by the United States District Court for the Eastern District of Kentucky of their petitions to review an opinion and order of the Referee in Bankruptcy and from the court's affirmance of same. The referee's order had denied appellant trustee's motion for turnover orders which would have required Grace Hayes, the bankrupt, to pay over $30,000 which represented the proceeds of a number of United States Savings Bonds.
 
 
 2
 The facts, which are not in dispute, were stated thus in the referee's opinion:
 
 
 3
 "The petition in bankruptcy was filed herein on July 1, 1964. On that date the bankrupt, Grace Hayes, was married to Joe E. Hayes. On March 7, 1965, approximately seven months subsequent to the filing of the petition in bankruptcy by his wife, Joe E. Hayes committed suicide.
 
 
 4
 "Mr. Hayes was a man of considerable means. His estate consisted of a 400 acre farm valued at $110,000.00 and personal property valued at $58,912.79, exclusive of insurance and the United States Savings bonds to which the trustee lays claim.
 
 
 5
 "Sometime after her husband's death, and after the completion of the appraisal of his estate for the probate court, Mrs. Hayes discovered the three bonds in the pocket of an overcoat which had belonged to her husband.
 
 
 6
 "The bonds were all payable to Joe E. Hayes `or' Grace Hayes. Mrs. Hayes knew of the existence of the bonds. She and her husband had received semi-annual dividend checks on two of the bonds over a period of years. Also, her husband had told her the bonds would be hers `without anything,' apparently meaning upon his death.
 
 
 7
 "Two of the bonds were Series H bonds with a face value of $10,000.00 each. It's established that one of these Series H bonds was purchased in June, 1954. The other Series H bond may have been purchased before that date.
 
 
 8
 "The remaining bond, of a denomination of $7,500.00, had accumulated interest and had a value of approximately $13,000.00 at the time it was cashed by the bankrupt.
 
 
 9
 "The bankrupt cashed one of the Series H bonds on August 30, 1965, and apparently cashed the other bonds at about the same time. She used the proceeds of the bonds in the construction of a 12-unit apartment building in Cynthiana, Kentucky. She lives in one of the apartments and rents the remainder.
 
 
 10
 "The bankrupt did not list any interest in the bonds as an asset in the schedules to her petition in bankruptcy. She denies having any interest in the bonds at the time the petition in bankruptcy was filed and asserts the bonds were the property of her husband.
 
 
 11
 "There was no evidence the bankrupt contributed any funds toward the purchase of the bonds. She testified her husband had possession of the bonds; that she had never seen the bonds until she discovered them in her husband's overcoat pocket after his death; that her husband kept the bonds in his safety deposit box, from which he apparently removed them sometime shortly prior to his death. The bankrupt never had access to the box."
 
 
 12
 Appellant-trustee in this appeal relies primarily upon the proposition that Treasury Regulations and other legal authority support the right of trustees in bankruptcy to reach a bankrupt's interests in United States Savings Bonds.
 
 
 13
 This principle seems to us to be thoroughly established by the explicit language of the Treasury Regulations which we quote hereafter — and in particular by 31 C.F.R. § 315.21 (1968).
 
 
 14
 And the authorities relied upon by appellants amply illustrate (directly or by implication) the right of a trustee in bankruptcy to reach a bankrupt's interest in United States Savings Bonds registered in coownership form. Simon v. Schaetzel, 189 F.2d 597 (10th Cir. 1951); Guldager v. United States, 204 F.2d 487 (6th Cir. 1953).
 
 
 15
 All of this authority, however, is largely beside the point in this case. For the dispute here is really whether or not the bankrupt, Grace Hayes, had any interest — or, more appropriately, any interest of value — as of July 1, 1964, the date of the petition in bankruptcy. The burden of proof on this issue is on the trustee in bankruptcy. See Maggio v. Zeitz, 333 U.S. 56, 64, 68 S.Ct. 401, 92 L.Ed. 476 (1948); Sheinman v. Chalmers, 33 F.2d 902 (3d Cir. 1929); In re Scranton Knitting Mills, Inc., 23 F.Supp. 803 (M.D.Pa. 1938).
 
 
 16
 In the Stock Yards Bank case, this court also pointed out:
 
 
 17
 "This court has held that coownership by husband and wife of Series E Bonds is not the equivalent of tenancy by the entirety under state law, but rather is an estate the limitations and conditions of which are delineated by the terms of the contract and by federal law. Guldager v. United States, 6 Cir., 1953, 204 F.2d 487. See Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Bank of America National Trust & Savings Ass'n v. Rocco, 3 Cir., 1955, 226 F.2d 297, 299." United States v. Stock Yards Bank of Louisville, 231 F.2d 628, 630 (6th Cir. 1956).
 
 
 18
 See also Marcum v. Marcum, 377 S.W. 2d 62 (Ky. 1964).
 
 
 19
 Thus, we look first (and primarily) to federal law for answers to the questions posed by this appeal.
 
 
 20
 The regulations pertaining to federal savings bonds authorize three forms of registration — single owner, coownership, and beneficiary or payable on death. 31 C.F.R. § 315.7 (1968). The regulations also provide that the registration "must express the actual ownership of and interest in" the bonds, except as otherwise provided in Subpart E, 31 C.F.R. § 315.5 (1968).[1]
 
 
 21
 Subpart E of the regulations, 31 C.F.R. § 315.21, specifically provides as follows:
 
 
 22
 "Subpart E — Limitation on Judicial Proceedings — No Stoppage or Caveats Permitted
 
 
 23
 * * * * * *
 
 
 24
 "§ 315.21 Payment to judgment creditors.
 
 
 25
 "(a) Creditors. Payment (but not reissue) of a savings bond registered in single ownership, coownership, or beneficiary form will be made to the purchaser at a sale under a levy or to the officer authorized to levy upon the property of the registered owner or coowner under appropriate process to satisfy a money judgment. Payment will be made to such purchaser or officer only to the extent necessary to satisfy the judgment and will be limited to the redemption value current sixty days after the termination of judicial proceedings. Payment of a bond registered in coownership form pursuant to a judgment or levy against only one of the coowner will be limited to the extent of that coowner's interest in the bond; this interest may be established by an agreement between the coowners or by a judgment, decree, or order of court entered in a proceeding to which both coowners are parties.
 
 
 26
 "(b) Trustees in bankruptcy and receivers. Payment of a savings bond will be made to a trustee in bankruptcy, a receiver of an insolvent's estate, a receiver in equity, or a similar officer of the court, under the applicable provisions of paragraph (a) of this section, except that payment will be made at the redemption value current on the date of payment." 31 C.F.R. § 315.21 (1968) (emphasis added).
 
 31 C.F.R. § 315.20 further provides:
 
 27
 "§ 315.20 General.
 
 
 28
 "(a) No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary, and all other provisions of this subpart are subject to this restriction. Otherwise, a claim against an owner or coowner of a savings bond and conflicting claims as to ownership of, or interest in, such bond as between coowners or between the registered owner and beneficiary will be recognized, when established by valid judicial proceedings, upon presentation and surrender of the bond, but only as specifically provided in this subpart.
 
 
 29
 "(b) Neither the Treasury Department nor any agency for the issue, reissue, or redemption of savings bonds will accept notices of adverse claims or of pending judicial proceedings or undertake to protect the interests of litigants who do not have possession of a bond." 31 C.F.R. § 315.20 (1968) (emphasis added).
 
 
 30
 Thus it appears clear that provision is made for judicial determination of the "extent" of interest of a registered coowner. And, likewise, it seems apparent that voluntary transfers inter vivos are ruled out.
 
 
 31
 Two other regulations, however, are essential to determination of the case. 31 C.F.R. §§ 315.39 and 315.60 provide in part:
 
 
 32
 "§ 315.60 Payment during the lives of both coowners.
 
 
 33
 "A savings bond registered in coownership form, for example, `John A. Jones or Mrs. Mary C. Jones,' will be paid to either upon his separate request, and upon payment to him the other shall cease to have any interest in the bond." 31 C.F.R. § 315.60 (1968).
 
 
 34
 "§ 315.39 Presentation and surrender.
 
 
 35
 * * * * * *
 
 
 36
 "A natural person whose name is inscribed on the face of a bond of Series A, B, C, D, or E, either as owner or coowner in his own right, may present such bond for redemption to an authorized paying agent.
 
 
 37
 * * * * * *
 
 
 38
 "If the bond is in order for payment, the paying agent will make immediate payment at the appropriate redemption value without charge to the owner or coowner." 31 C.F.R. § 315.39 (1968).
 
 
 39
 Thus a coowner in possession of a bond can cash the same without the knowledge or consent of the other registered coowner. By making these bonds readily negotiable, the government has doubtless enhanced their attractiveness. But this same regulation tends to make possession one of the most important incidents of ownership of these bonds.
 
 
 40
 Significant also is the statutory definition of the rights of a trustee in bankruptcy in relation to "property" of the bankrupt. For purposes of the bankruptcy statute, property of this character is defined thus:
 
 
 41
 "(5) property, including rights of action, which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *." 11 U.S.C. § 110(a) (5) (1964).
 
 
 42
 Thus if the bankrupt had any interest of value in these bonds, it could have been levied upon by the trustee. But as we have noted, these bonds were not transferable and, absent possession, Grace Hayes could not have cashed a bond and thus transferred its value.
 
 
 43
 In the Stock Yards Bank case this court discussed registered coowner interests in United States Savings Bonds and held that the extent of such interest is a question of fact:
 
 
 44
 "As between two co-owners * * * the regulations as well as judicial decisions have recognized that the extent of the property interest of each is a question of fact, not of law. One co-owner may as a matter of fact be the sole owner of the bond; he may be a half owner; he may have some other fractional ownership. Thus, the regulations provide that `a claim against an owner or co-owner of a savings bond and conflicting claims as to ownership of or interest in such bond as between coowners * * * will be recognized when established by valid judicial proceedings. * * *' They further provide that `if a debtor, or bankrupt, or insolvent is not the sole owner of the bond, payment will be made only to the extent of his interest therein, which must be determined by the court or otherwise validly established.' 31 Code Fed. Reg. § 315.13. See Barrett v. Barrett, D.C.N.D.Ohio1950, 91 F.Supp. 680, 684; United States v. Ridley, D.C.N.D. Ga.1954, 120 F.Supp. 530, 537; Guldager v. United States, 6 Cir., 1953, 204 F.2d 487, 488." United States v. Stock Yards Bank of Louisville, 231 F. 2d 628, 631 (6th Cir. 1956) (emphasis in original).
 
 
 45
 Applying these principles of federal law to the undisputed facts of this case, we find the following situation. On the date of the filing of the petition in bankruptcy, the trustee stepped directly into Grace Hayes' shoes. 11 U.S.C. § 110(a) (1964). And on that date Grace Hayes did not have the bonds, had paid nothing for them, and could have been divested of any interest in the bonds at any moment. She could not on these facts have enforced any equitable interest in the bonds as opposed to her husband.
 
 
 46
 What Grace Hayes possessed on July 1, 1964, was an inchoate interest in United States Savings Bonds contingent upon two uncertain future events: 1) that her husband died before she did, and 2) that in the meantime he did not cash the bonds. We believe that we must read the order entered in the court below as a finding that this inchoate future interest was valueless as of July 1, 1964.
 
 
 47
 We have already noted the problems Grace Hayes would have had in enforcing any claim as of that date. And if the trustee in bankruptcy had known of the bonds and sought to bring action to claim an interest therein as of July 1, 1964, while Joe E. Hayes was alive, it strains our imagination to think the trustee could have been successful.
 
 
 48
 Appellants rely heavily upon Marcum v. Marcum, 377 S.W.2d 62 (Ky. 1964). The sole issue in the Marcum case, however, was what interest, if any, a person registered as a coowner of a United States Savings Bond possessed after the death of the purchaser (also registered as a coowner) where possession had never been transferred to the survivor. Relying entirely upon another Treasury Regulation, 31 C.F.R. § 315.61 (now § 315.62), the Kentucky Court of Appeals held that the survivor was the sole owner and that lack of possession did not defeat his title.
 
 
 49
 The Marcum case recognized, as do we, "that a United States Savings Bond is a valid and binding contract which is determinative of the rights of the parties named therein; that the Treasury regulations must be read into that contract; and that ownership is to be governed by its terms." Id. at 64.
 
 
 50
 Quite incidentally, however, the Kentucky Court of Appeals also said:
 
 
 51
 "According to the terms of the bonds in controversy William and Hugh have been joint co-owners of these governmental obligations since the day they were issued, and also according to those terms, upon the death of their father their ownership became sole and absolute." Id. at 64.
 
 
 52
 We believe that the quoted sentence is 1) dictum, and 2) a misconstruction of the effect of the controlling federal regulations.
 
 
 53
 Viewed against the background of the undisputed facts as recorded by the referee, what the trustee in bankruptcy had when she stepped into Grace Hayes' shoes on July 1, 1964, was an inchoate interest in bonds contingent upon uncertain future events and revocable upon the will or whim of an adverse third party. We read the referee and District Judge's decision as a finding of fact that the economic value of this interest was nil. On all the facts in this case, we cannot declare this finding to be clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).
 
 
 54
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable Frank M. Coffin, United States Circuit Judge, First Circuit, sitting by designation
 
 
 [1]
 31 C.F.R. § 315.5 provides in part that: "Savings bonds are issued only in registered form. The registration used on issue or reissue must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in Subpart E * * * will be considered as conclusive of such ownership and interest."